STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven E. DuFRAME, Defendant-Appellant.†

Court of Appeals

*No. 81–2001–CR. Submitted on briefs February 24, 1982.—*
*Decided April 13, 1982.*
(Also reported in 320 N.W.2d 210.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Michael F. Hupy* of *Hausmann, McNally & Hupy, S.C.* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J.    Steven E. DuFrame appeals from the court order denying his motion to dismiss on double jeopardy grounds.  Both parties agree that the sole issue before this court is whether retrial of the appellant is barred by double jeopardy where his first trial ended in a mistrial ordered *sua sponte* by the trial court.  This court holds that the principle of double jeopardy does not bar the retrial.

On April 27, 1980, the automobile DuFrame was driving struck and killed an eighteen-year-old woman.  As a result of the accident, he was charged with homicide by intoxicated use of a motor vehicle in violation of sec. 940.09, Stats.

DuFrame was tried by a jury.  After deliberating for approximately ten hours, at least four of the members of the jury felt that there was not a reasonable prospect of reaching a unanimous verdict.  The trial court *sua sponte* found that the jury was hopelessly deadlocked. DuFrame then moved to dismiss on double jeopardy grounds, and his motion was denied.  This court granted leave to appeal the trial court's ruling.

The defendant argues that the trial court failed to make adequate findings to support the decision to *sua sponte* declare a mistrial. He correctly points out that a "manifest necessity" must be established to support the court's decision. However, contrary to the defendant's assertion, the record is sufficient to support the mistrial declaration.

Both the federal and state constitutions provide that a defendant may not be placed twice in jeopardy for the same offense. U.S. CONST. amend. V; WIS. CONST. art. I, § 8. *See also State v. Calhoun,* 67 Wis. 2d 204, 226 N.W.2d 504 (1974). Both parties agree that jeopardy attached in this case because the jury had been selected and sworn. Sec. 972.07, Stats. Although jeopardy attached, the trial did not end in either a conviction or an acquittal. "Whether further prosecution is permissible depends on the facts and circumstances of the case." *State v. Jenich,* 94 Wis. 2d 74, 83–84, 288 N.W.2d 114, 118 (1980).

The criteria to be used in evaluating a trial court's *sua sponte* mistrial declaration were set forth in *dicta* in *State v. Copening,* 100 Wis. 2d 700, 303 N.W.2d 821 (1981). There the court stated:

[I]t is not infrequent that a trial court discerns *sua sponte* the necessity for a mistrial. When the trial court on its own volition orders a mistrial without the defendant's request or consent, or even over defendant's objection, the Fifth Amendment may, but does not necessarily, bar reprosecution. This situation is viewed in sharp distinction from that which ordinarily results from a mistrial on the defendant's motion, where, as we have stated above, the defendant has consciously elected to have a case tried in another forum. However, where the impetus for the mistrial comes from the court, the defendant without his acquiecence loses his right to be tried in the original forum. Thus, reprosecution will be barred unless there is a "manifest necessity" for the mistrial. *United States v. Perez,* 22 U.S. (9 Wheaton) 579 (1824).

In that case, Justice Story enunciated what has come to be called the "manifest necessity" test. He said:

". . . Courts of justice [may] discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." (P. 580)

The trial court's exercise of discretion in making this *sua sponte* determination is ordinarily entitled to considerable deference on review by an appellate court. *Gori v. United States,* 367 U.S. 364 (1961). This is because the usual prejudicial development resulting in mistrial is of a type whose effect is best assessed by the trial court's first-hand observation. It is appropriately left to the exercise of trial court discretion; and on review the test is whether, under all the facts and circumstances, giving deference to the trial court's first-hand knowledge, it was reasonable to grant a mistrial under the "manifest necessity" rule. It has been pointed out that a stricter standard might deter trial courts from granting mistrials, even when under the circumstance it appears appropriate, because of the fear that an appellate court might too readily disagree and reverse, which result would bar retrial. *Arizona v. Washington,* 434 U.S. 497 (1978). [Footnote omitted.]

*Id.* at 709–10, 303 N.W.2d at 826–27.

The supreme court went on to set forth the standards by which the "manifest necessity" test is to be judged:

The fact, however, that considerable deference normally is to be given to the trial court's determination of "manifest necessity" does not mean that this determination is not of great importance. The defendant has a valued interest in obtaining a verdict from the first tribunal before which he appears. Thus, the trial court's exercise of discretion must be scrupulous and a mistrial, absent a motion by the defendant, should only be granted in the event of "manifest necessity" or where required by the ends of public justice. *United States v. Jorn,* 400 U.S. 470 (1971), reiterating the admonition of *Perez, supra. See* also, *Illinois v. Somerville,* 410 U.S. 458 (1973). Thus, whether retrial after a mistrial declared

without the defendant's request or consent is permissible under the double jeopardy clause depends on "whether 'there [was] a manifest necessity for the [mistrial],' or the ends of public justice would otherwise [have been] defeated." *United States v. Dinitz, supra* at 607. Accordingly, if these tests are not met, the bar of double jeopardy applies, and the defendant may not be retried. *See* also, *State v. Kendall,* 94 Wis. 2d 63, 72, 287 N.W.2d 758 (1980); *State v. Harrell,* 85 Wis. 2d 331, 334, 270 N.W.2d 428 (Ct. App. 1978). Most recently, the United States Supreme Court has stated that the "manifest necessity" test requires not just necessity but a "high degree" thereof and precludes a trial court from ordering a mistrial irrationally or irresponsibly. The supreme court also emphasized that trial courts considering a mistrial declaration *sua sponte* or on the motion of the prosecutor should consider other alternatives before depriving a defendant of the valued right to keep his confrontation with society before the original tribunal. *Arizona v. Washington,* 434 U.S. 497 (1978). As indicated above, the same rationale and analysis applies where the mistrial is ordered on the motion of the prosecutor over the defendant's objection. Scrutiny of the trial court's decision is especially strict, where the mistrial motion is made because of the government's unpreparedness for trial *(Downum v. United States,* 372 U.S. 734 (1963)) or where the prosecutor is using superior resources of the state to achieve a tactical advantage over a defendant or to harass him *(Arizona v. Washington, supra).*

*Id.* at 710–11, 303 N.W.2d at 827.

The trial judge's decision to order a mistrial is a difficult one. "In the hung-jury situation . . . efforts to break deadlock inherently involve a degree of pressure that may, precisely because of its success, taint the fairness of the resulting verdict. The judge accordingly must tread a thin line between discharging a jury too quickly and not discharging it quickly enough." Schulhofer, *Jeopardy and Mistrials,* 125 U. Pa. L. Rev. 449, 487 (1977).

The record indicates that the jury deliberated, through the night, for approximately eight hours. At that time,

the trial judge inquired into the progress of the deliberations. As described by the trial court, the subsequent events were as follows:

At 2:32 a.m. the jury was recalled by the Court and the Court inquired of the jury foreman as to whether further deliberations presented a reasonable prospect of agreement. The foreman responded that the jury was not in complete agreement but the prospect of agreement was present. The Court directed the jury to continue their deliberations.

At 3:50 a.m. the Court again recalled the jury. At this time the Court put essentially the same question to the jury foreman. The response was that one vote had changed in the preceding hour and a half and that agreement was still possible but that it was becoming "harder and harder". The Court noted a negative shake of the heads of certain jurors as the jury foreman gave this response, and the Court then asked for a show of hands of those who felt that further deliberations would not result in agreement. Four hands were raised, and the Court noted certain additional hands being raised. The jury was directed to return to the jury room to continue deliberations, and the Court conducted a proceeding outside the presence of the jury in order to discuss the matter with counsel. At 4:00 a.m. the jury was recalled and again the Court asked for a show of hands who felt that agreement was not possible, and again four hands were raised. At this time the Court found the jury to be hopelessly deadlocked and declared a mistrial.

It is clear that the trial judge weighed the possibility of agreement through further deliberation. Four jurors felt such agreement was not possible. As the court in *Wheeler v. State*, 87 Wis. 2d 626, 275 N.W.2d 651 (1979), noted, the trial court's finding that it had no choice but declare a mistrial "implies a weighing of possible alternatives and a thoughtful exercise of discretion." *Id.* at 632–33, 275 N.W.2d at 654.

We conclude the defendant's retrial is not barred by the double jeopardy clause of either the federal or state constitutions. The trial court appropriately exercised its discretion to declare a mistrial because of the jury's inability to agree. Accordingly, we affirm the order of the trial court denying the defendant's motion to dismiss.

*By the Court.*—Order affirmed.